UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CIVIL ACTION NO:

CARMEN KROWEL,

        Plaintiff,

v.

        JURY TRIAL DEMANDED

PALM BEACH COUNTY BOARD OF
COUNTY COMMISSIONERS,

        Defendant.

_____/

## COMPLAINT

Plaintiff, CARMEN KROWEL, by and through her undersigned counsel, hereby files this Complaint for discrimination and retaliation action against Defendant, PALM BEACH COUNTY BOARD OF COUNTY COMMISSIONERS (the "County" or "Defendant"), pursuant to Title VII of the Civil Rights Act of 1964, the Florida Civil Rights Act, and the Palm Beach County Equal Employment Ordinance, and alleges as follows:

## PRELIMINARY STATEMENT

1. Ms. Krowel is a retired combat veteran of the United States Air Force, who has dedicated her life to public service.

2. On January 4, 2021, Ms. Krowel was hired by Palm Beach County Division of Senior Services & Veteran Services as a full time Assistant Veteran Services Officer reporting to County Veteran Service Officer, Andrew Reese.

3. At the beginning of her employment, Mr. Reese told Ms. Krowel that she was only hired because she was a Hispanic female (even though the population she served was predominantly male) and made clear that he believed other minorities in the county were also hired

1

because of the color of their skin, including Director of Veteran Services, James Greene (Black male), who Mr. Reese referred to as "*a prop like Barrack Obama*."

4. Mr. Reese's treatment of Ms. Krowel was also noticeably different than the White males in her department.

5. Specifically, Mr. Reese would belittle and try to control Ms. Krowel.

6. For example, Mr. Reese would tell Ms. Krowel to be quiet, to make all requests through him, and to do things, "*Because I said so*."

7. Despite the hard work that Ms. Krowel performed for the County's veterans, Mr. Reese continued to mistreat Ms. Krowel for doing such things as requesting an extension cord from the Building's Manager (a Black female) or requesting access to information and resources necessary to perform her job.

8. In November 2021, Mr. Reese reprimanded Ms. Krowel for contacting the County's Fiscal Department about the status of her expense reimbursement for a VA conference she had attended in Tampa.

9. Ms. Krowel asked Mr. Reese if there was a policy against contacting the Fiscal Department about a reimbursement, and he responded that, "*Debating [him] on this issue is insubordinate*."

10. Tired of being disrespected for being a woman and a minority, Ms. Krowel wrote to Mr. Reese that she felt "*harassed, disrespected, and [would] take the proper steps to ethically address the issue*."

11. Shortly thereafter, Ms. Krowel complained to the County's Employee Relations Department about Mr. Reese's offensive and discriminatory treatment and filed a formal complaint

with the County's Fair Employment Practices Department on November 22, 2021. *See* **Exhibit ("Ex.") 1**, Discrimination/Harassment/Retaliation Complaint Form.

12. Six days later, on November 29, 2021, Mr. Reese called Ms. Krowel into a meeting and terminated her employment for no specific reason.

13. Following the termination, Ms. Krowel participated in the County's investigation of her discrimination complaint.

14. On June 22, 2022, Defendant issued a Notice of Determination in response to Ms. Krowel's discrimination complaint. *See* **Ex. 2**, Notice of Determination.

15. The County's investigation corroborated that Mr. Reese "made various offensive comments starting in January 2021 and throughout the year" and that Mr. Reese was "rude and not treating all employees equally," and "spoke in a different tone and volume to [Ms. Krowel], Female, than he did to the Male employees. *See* **Ex. 3**, Investigative Memorandum.

16. Despite the County finding reasonable cause to believe that Mr. Reese created an unlawful hostile work environment for Ms. Krowel, the County closed Ms. Krowel's complaint without providing her any relief.

17. Through this action, Ms. Krowel seeks to redress the discriminatory and retaliatory treatment she has suffered at the hands of Mr. Reese.

## PARTIES

18. Plaintiff, CARMEN KROWEL, is a bilingual Colombian female and resident of Palm Beach County, Florida. She is a former Assistant Veteran Services Officer who was employed by the County from January 4, 2021, until her termination on November 29, 2021.

19. Defendant, PALM BEACH COUNTY BOARD OF COUNTY COMMISSIONERS, is a local government agency with its principal place of business located at 301 N. Olive Avenue, West Palm Beach, Florida 33401.

## JURISDICTION AND VENUE

20. The jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq*. As such, the Court has original jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as this action involves a federal question regarding the deprivation of Plaintiff's civil rights.

21. This Court has supplemental jurisdiction over Plaintiff's state and local claims arising under the Florida Civil Rights Act of 1992 ("FCRA"), Fla. Stat. §§ 760.01-760.11 and the Palm Beach County Equal Employment Ordinance ("PBCO"), pursuant to 28 U.S.C. § 1367(a), as Plaintiff's claims are so related to her Title VII claim that it forms part of the same case or controversy.

22. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred within this judicial district.

## ADMINISTRATIVE PREREQUISITES

23. On March 9, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Florida

Commission on Human Relations ("FCHR"), alleging unlawful discrimination and retaliation based on race, national origin and gender in violation of Title VII and the FCRA.

24. On October 11, 2022, Plaintiff was issued a Notice of Right to Sue from the EEOC and timely brings this action within 90 days of receipt of the Notice.

25. Pursuant to FCRA § 760.11(8), Plaintiff asserts claims under the FCRA since more than 180 days have passed without there being a determination by the FCHR on whether reasonable cause exists.

26. Plaintiff has exhausted her administrative remedies with the County's Human Resources, Fair Employment Programs and was issued a Notice of Determination on June 9, 2022.

## STATEMENT OF FACTS

27. Ms. Krowel is a 60-year-old retired combat veteran of the United States Air Force with a Bachelor's degree in Business Administration and Management, and two Masters' degrees in Human Resources Management and Education.

28. On January 4, 2022, Ms. Krowel was hired by Palm Beach County Division of Senior Services & Veteran Services ("Veteran Services") as a full time Assistant Veteran Services Officers.

29. In her role, Ms. Krowel was assigned to the largest geographical territory, which she managed for several months without issue before the department hired another employee to assist with the region.

30. As a result, Ms. Krowel received positive feedback for her performance and was presented with the Golden Coconut, a section award recognizing employees who significantly increase productivity in providing state services.

31. Upon hire, Ms. Krowel was trained by Andrew Reese (White male), who later became the Veteran Services Supervisor, and Ms. Krowel's direct supervisor.

32. Despite her positive contributions to the department, Mr. Reese made discriminatory comments about Ms. Krowel's race, national origin and gender, and mistreated Ms. Krowel because she is a woman, throughout the duration of her employment.

33. In January 2021, Mr. Reese told Ms. Krowel that the only reason she was hired by Veteran Services was because she is a female who can speak Spanish.

34. Mr. Reese lamented that he did not understand why the Veteran Services division sought to hire a woman when a majority of those enlisted in the armed services are men.

35. As 2021 progressed, Mr. Reese's discriminatory microaggressions became increasingly obvious and aggressive in nature.

36. The following are only some examples of Mr. Reese's offensive, discriminatory behavior directed towards, or witnessed by, Ms. Krowel during her employment:

   a. Mr. Reese discounted the fact that Ms. Krowel is an educated, female combat veteran, and attempted to prevent her from including her earned degrees and Air Force rank on her business cards;

   b. Mr. Reese told Ms. Krowel that the prior Veteran Services supervisor, a Puerto Rican male, was only hired because he was a minority, and suggested, without basis in fact, that he had broken the law;

   c. Mr. Reese regularly referred to Community Services Department Director, James Greene (Black), as unintelligent, stating that Mr. Greene did the same thing for the black community as President Obama, which, according to him, was nothing;

   d. Mr. Reese described Mr. Greene's video conference meetings as the "*Greene Clown Show*";

   e. Mr. Reese made disparaging remarks to Community Center Manager, Antoinette Austin (Black female);

      f.      Mr. Reese told Ms. Krowel and her coworker, Rohn Hultgren, that he would sue Palm Beach County if another minority was hired over him for a higher level position;

      g.      Mr. Reese told Ms. Krowel's coworker, Nickenson Dumercy (Black male), that he needed to cut his dreadlocked hair to look more professional; and

      h.      When Ms. Krowel told Mr. Reese she was impressed with a young, African American woman who had become a Director at such a young age, Mr. Reese simultaneously told Ms. Krowel it was because she was female while pointing to his arm in reference to the color of her skin.

37. Mr. Reese also exhibited aggressive behavior towards Ms. Krowel that would not have occurred but for her gender.

38. For example, two weeks into Ms. Krowel's employment, in response to Ms. Krowel's training-related question, Mr. Reese told Ms. Krowel, "***Will you keep quiet?***"

39. When she stood up to leave, Mr. Reese followed Ms. Krowel to her office and addressed her like a military superior does a subordinate.

40. Believing Mr. Reese was targeting her because of her immutable characteristics, Ms. Krowel tearfully told Mr. Reese that she could not change her gender or race and asked him to get away from her.

41. On another occasion, after telling Mr. Reese that she was having trouble understanding some of his case notes in the Veteran Services computer system, he threw his chair up against the wall and yelled words to the effect of, "***If you think you can do better, then you write it!***"

42. On several occasions, Ms. Krowel asked Mr. Reese to speak to her in the same respectful manner he spoke to Rohn Hultgren (White male), but Mr. Reese ignored Ms. Krowel's requests and walked away.

43. Ms. Krowel's coworkers were also aware of Mr. Reese's discriminatory treatment of Ms. Krowel.

44. When Ms. Krowel spoke with Mr. Hultgren about Mr. Reese's discriminatory conduct directed towards her, he was supportive, acknowledged the mistreatment, and encouraged Ms. Krowel not to quit her job.

45. Mr. Reese also exhibited a desire to control women and prohibited Ms. Krowel from communicating with any other County departments, even if such communications were unrelated to her job duties and responsibilities.

46. For example, when Ms. Krowel informed Mr. Reese that she had worked with Alnita Coleman to correct her business cards, Mr. Reese became angry and proclaimed in a loud, aggressive tone, "***You are to go through me!***"

47. When Ms. Krowel asked him why she needed to go through him to correct her business cards, he yelled, "***Because I said so!***"

48. Mr. Reese also ignored Ms. Krowel's requests for standard office supplies and to resolve her computer issues, and then became angry when she sought assistance so that she was able to perform her job.

49. In June 2021, when the Veteran Services department relocated to a different office, Mr. Reese yelled at Ms. Krowel for "going outside the chain of command" when she asked Building Manager, Tina (Black female), *for an extension cord with a surge protector* (even though Mr. Reese's direct supervisor had instructed Ms. Krowel to contact Tina if she needed anything).

50. Mr. Reese hindered her ability to perform her job duties by grossly delaying access to County systems and functions that required his intervention and approval, and that were necessary for her to perform her job and available to similarly situated employees without issue.

51. For example, Mr. Reese delayed Ms. Krowel's access to the veteran database for five months – nearly half the duration of her employment – and did not request access to the veteran Database fax system on Ms. Krowel's behalf to enable her to receive faxed documents from veterans who she was assisting with benefits-related paperwork.

52. In order to obtain information contained on the database and receive faxes from veterans that could not be faxed directly to her, Ms. Krowel had no choice but to ask other employees for help.

53. When Mr. Reese found out, he became upset with Ms. Krowel for requesting the information and resources to which she should have had access to perform her job, but was prevented from doing so due to Mr. Reese's refusal to approve her access.

54. Mr. Reese constantly tried to silence Ms. Krowel and shut her down because she was a woman and minority.

55. On November 17, 2021, Ms. Krowel contacted Hong Truong (Fiscal Department) about the status of her expense reimbursement for a VA conference she had attended in Tampa.

56. On November 18, 2021, when Mr. Reese learned that Ms. Krowel had reached out to Ms. Troung without first speaking with him, told Ms. Krowel, "***Do not contact Hong without first clearing it with me***."

57. Confused about his contention that she was required to obtain his permission to inquire about her pay, Ms. Krowel asked Mr. Reese to point her to the County policies that prohibited her from contacting the accounting department about individual pay issues.

58. Instead, Mr. Reese supplied Ms. Krowel with policies related to insubordination and failure to follow instructions, told Ms. Krowel that "***debating [him] on this issue is insubordinate***," and increased Ms. Krowel's concern that he was retaliating against her.

59. Ms. Krowel replied that the policies did not govern the issue in question, and told Mr. Reese that she felt "*harassed, disrespected, and [would] take the proper steps to ethically address the issue*."

### Ms. Krowel Files a Discrimination Complaint

60. On November 18, 2021, following the emails with Mr. Reese, Ms. Krowel called Sheila Woodbury, Employee Relations Division to report Mr. Reese's discriminatory and hostile behavior, and inquire about the alleged policy prohibiting employees from contacting payroll without first notifying a supervisor.

61. Ms. Krowel forwarded to Ms. Woodbury a copy of Mr. Reese's email suggesting she was insubordinate, and prepared a separate statement detailing several examples of Mr. Reese's misconduct directed towards her and other County employees.

62. Ms. Krowel made clear to Ms. Woodbury that Mr. Reese did not make her feel like a "valued employee due to her gender and race," and she believed he was retaliating against her.

63. On November 19, 2021, Mitchell Vinokur (Palm Beach County HR Specialist IV), contacted Ms. Krowel at Ms. Woodbury's request, and provided her with the County's formal complaint paperwork.

64. On November 22, 2021, Ms. Krowel submitted to Mr. Vinokur and Ms. Woodbury the completed County's Discrimination/Harassment/Retaliation Complaint Form. **Ex. 1**.

65. In her complaint, Ms. Krowel selected gender, race/color, national origin, and age as the bases for discrimination, and described several examples of Mr. Reese's discriminatory conduct, included hereinabove.

### Ms. Krowel is Abruptly Terminated

66. On November 29, 2021, Ms. Krowel emailed James Green to inquire about his open-door policy and request an urgent meeting with him to discuss Mr. Reese.

67. Mr. Green was not in the office, but told Ms. Krowel he would be available on Tuesday, November 30, 2021.

68. Later that morning, Ms. Krowel was called into a meeting with Mr. Reese and Faith Manfra, Division Director of Senior & Veteran Services.

69. At the meeting, Ms. Krowel was informed that she was being terminated for "unsatisfactory completion of [her] probationary period."

70. No further details were provided as to the reasons for Ms. Krowel's alleged unsatisfactory completion of her probationary period, which was due to expire five weeks from the date on which she was terminated.

71. Because Ms. Krowel was within her one-year probationary period, she was not permitted to contest or challenge her termination.

72. Throughout her employment, Ms. Krowel had not received any prior verbal or written warnings about her performance.

73. To the contrary, Ms. Krowel was awarded the Golden Coconut, a section award recognizing the employee who achieved the highest production during a three-month period.

### The County's Investigation of Ms. Krowel's Complaint

74. On December 1, 2021, Ms. Krowel was interviewed by Mr. Vinkour regarding the ongoing investigation into her formal discrimination complaint.

75. Following Ms. Krowel's interview, Ms. Krowel submitted additional information to Mr. Vinokur regarding examples of Mr. Reese's discriminatory conduct.

76. On February 18, 2022, Ms. Krowel inquired about the status of her formal complaint and was told the County was "backlogged" and had not completed its investigation.

77. On April 7, 2022, Ms. Krowel was informed that the County was still conducting its investigation into her complaint.

### The County's Reasonable Cause Determination

78. On June 22, 2022, Defendant issued a Notice of Determination in response to Ms. Krowel's discrimination complaint.

79. A copy of the Notice of Determination is attached hereto as **Ex. 2**.

80. The County found that there was reasonable cause to believe discrimination had occurred based on Mr. Reese's creation of an intimidating and hostile work environment.

81. Specifically, Defendant found that "there were reasonable grounds to believe discrimination occurred on the issue of intimidation/hostile working environment."

82. The evidence contained in the Investigative Memorandum, attached hereto as **Ex. 3**, supports this finding, and includes a summary of the following third-party witness statements:

- Witness Hultgren stated there was an employee, Complainant, who used to work there and she would complain to him about sexist remarks made towards her. *Id.* at 3.

- Witness Dumercy said that Respondent spoke more loudly with Complainant then with other employees. Respondent did not speak to the other employees, who were all male, the same way; he was more respectful to the males. *Id.*

- Witness Dumercy informed Respondent that Complainant told him Respondent only hired her because she was a Hispanic speaking woman. *Id.*

- Witness Dumercy said that sometime in the fall 2021, there were video conferences with Director James Green. One conference was to inform them there may be a new Diversity, Equity, Inclusion department. Director Green held the conference to go over how to have dialogues on the topics and to review some definitions. Witness Dumercy said Respondent referred

> to Director Green as a "community guy" who is not qualified, should not speak on these matters, and was just a prop like Barrack Obama. *Id.* at 4.

- Witness Dumercy said Respondent would refer to the virtual meetings as "the Green Clown Show." *Id.*

- Witness Austin [female] said there was an incident where Respondent was yelling at Complainant. Complainant had asked Witness Austin for whiteout and an extension cord, which she provided her. Respondent was irritated by this and made a trip to the Lake Worth location to speak with Witness Austin and instructed her not to assist Complainant. Respondent raised his voice and Witness Austin said he was speaking down to her. *Id.* at 6.

- Witness Truong had no recollection of telling Respondent that Complainant was contacting her too much. She said that Complainant was very sweet, did not contact her too much and that she only had one e-mail from Complainant. *Id.* at 9.

- Witness Dover said there was another probationary employee, Witness Dumercy, who Respondent told his dreads did not make a professional appearance and he should cut them or else. *Id.* at 12.

83. Despite this finding and evidence, The Palm Beach County Fair Employment Program closed its file and did not offer to conciliate Ms. Krowel's claims. *See* **Ex. 2** at 2.

84. In addition, even though Ms. Krowel was terminated on November 29, 2021, seven (7) days after she submitted her discrimination complaint, and interviewed by the investigator on December 1, 2021, after her termination, the Palm Beach County Fair Employment Program investigator did not investigate the retaliation claim or make any finding.

**FIRST CAUSE OF ACTION**
**(Discrimination/Hostile Work Environment in Violation of Title VII)**
*Against Palm Beach County Board of County Commissioners*

85. Plaintiff repeats, reiterates, and re-alleges the factual allegations set forth in Paragraphs 1-20, 22, 23-24, and 27-84, as though fully set forth herein.

86. By the actions described above, among others, Defendant discriminated against Plaintiff because of her gender, race, and/or national origin, including by, *inter alia*, creating a hostile work environment and terminating her employment.

87. As direct and proximate result of Defendant's discrimination and creation of/failure to remedy a hostile work environment, in violation of Title VII, Plaintiff has suffered, and continues to suffer lost wages and benefits, emotional distress for which she is entitled to an award of monetary damages.

88. Defendant's discrimination was intentional or engaged in with malice or with reckless indifference to Plaintiff's rights for which an award of punitive damages will be sought.

89. Plaintiff also seeks reasonable attorneys' fees and expenses as provided for under Title VII.

## SECOND CAUSE OF ACTION
**(Discrimination/Hostile Work Environment in Violation of the FCRA)**
*Against Palm Beach County Board of County Commissioners*

90. Plaintiff repeats, reiterates, and re-alleges the factual allegations set forth in Paragraphs 1-19, 21-23, 25, and 27-84, as though fully set forth herein.

91. By the actions described above, among others, Defendant discriminated against Plaintiff because of her gender, race, and national origin, including by, *inter alia*, creating a hostile work environment and terminating her employment.

92. As direct and proximate result of Defendant's discrimination and creation of/failure to remedy a hostile work environment, in violation of the FCRA, Plaintiff has suffered, and continues to suffer lost wages and benefits, emotional distress for which she is entitled to an award of monetary damages.

93. Defendant's discrimination was intentional or engaged in with malice or with reckless indifference to Plaintiff's rights for which an award of punitive damages will be sought.

94. Plaintiff also seeks reasonable attorneys' fees and expenses as provided for under the FCRA.

### THIRD CAUSE OF ACTION
### (Retaliation in Violation of Title VII)
*Against Palm Beach County Board of County Commissioners*

95. Plaintiff repeats, reiterates, and re-alleges the factual allegations set forth in Paragraphs 1-20, 22, 23-24, and 27-84, as though fully set forth herein.

96. By the actions described above, among others, Defendant retaliated against Plaintiff because she complained about discrimination, intimidation, and a hostile work environment, including by, *inter alia*, terminating her employment.

97. As a direct and proximate result of Defendant's retaliatory conduct, in violation of Title VII, Plaintiff has suffered, and continues to suffer, lost wages and benefits and emotional distress for which she is entitled to an award of monetary damages.

98. Defendant willfully and intentionally subjected Plaintiff to unlawful retaliation, including, but not limited to, through the concerted creation of a hostile work environment, for her opposition to, reporting of, and lodging complaints regarding discrimination in reckless indifference to Plaintiff's rights for which an award of punitive damages will be sought.

99. Plaintiff also seeks reasonable attorneys' fees and expenses as provided for under Title VII.

## FOURTH CAUSE OF ACTION
### (Retaliation in Violation of the FCRA)
*Against Palm Beach County Board of County Commissioners*

100. Plaintiff repeats, reiterates, and re-alleges the factual allegations set forth in Paragraphs 1-19, 21-23, 25, and 27-84, as though fully set forth herein.

101. By the actions described above, among others, Defendant retaliated against Plaintiff because she complained about discrimination, intimidation, and a hostile work environment, including by, *inter alia*, terminating her employment.

102. As a direct and proximate result of Defendant's retaliatory conduct, in violation of the FCRA, Plaintiff has suffered, and continues to suffer, lost wages and benefits and emotional distress for which she is entitled to an award of monetary damages.

103. Defendant willfully and intentionally subjected Plaintiff to unlawful retaliation, including, but not limited to, through the concerted creation of a hostile work environment, for her opposition to, reporting of, and lodging complaints regarding discrimination in reckless indifference to Plaintiff's rights for which an award of punitive damages will be sought.

104. Plaintiff also seeks reasonable attorneys' fees and expenses as provided for under the FCRA.

## FIFTH CAUSE OF ACTION
### (Discrimination/Hostile Work Environment in Violation of PBCO Article IV, Sec. 2-310)
*Against Palm Beach County Board of County Commissioners*

105. Plaintiff repeats, reiterates, and re-alleges the factual allegations set forth in Paragraphs 1-19, 21-22, and 26-84, as though fully set forth herein.

106. Defendant discriminated against Plaintiff with respect to the terms, conditions, or privileges of her employment, including, but not limited to, through the concerted creation of a hostile work environment and termination.

107. As a direct and proximate result of Defendant's discriminatory conduct, in violation of the PBCO, Plaintiff has suffered, and continues to suffer, lost wages and benefits and emotional distress for which she is entitled to an award of monetary damages.

108. Defendant willfully and intentionally subjected Plaintiff to unlawful discrimination, including, but not limited to, through the concerted creation of a hostile work environment and termination, for which an award of punitive damages will be sought.

109. Plaintiff also seeks reasonable attorneys' fees and expenses as provided for under the Sec. 2-310 of the PBCO.

### SIXTH CAUSE OF ACTION
**(Retaliation in Violation of PBCO Article IV, Sec. 2-310)**
*Against Palm Beach County Board of County Commissioners*

110. Plaintiff repeats, reiterates, and re-alleges the factual allegations set forth in Paragraphs 1-19, 21-22, and 26-84, as though fully set forth herein.

111. Defendant retaliated against Plaintiff for her opposition to, reporting of, and lodging complaints regarding gender, race, and national origin discrimination.

112. As a direct and proximate result of Defendant's retaliatory conduct, in violation of the PBCO, Plaintiff has suffered, and continues to suffer, lost wages and benefits and emotional distress for which she is entitled to an award of monetary damages.

113. Defendant willfully and intentionally subjected Plaintiff to unlawful retaliation for her opposition to, reporting of, and lodging complaints regarding discrimination in reckless indifference to Plaintiff's rights for which an award of punitive damages will be sought.

114. Plaintiff also seeks reasonable attorneys' fees and expenses as provided for under the Sec. 2-310 of the PBCO.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendant, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States;

B. An injunction and order permanently restraining Defendant and their partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C. An award of damages against Defendant, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, an award of back pay and loss of benefits through the date of trial and front pay and future loss of benefits if the equitable remedies of employment, reinstatement and promotion are not feasible;

D. An award of compensatory damages, including but not limited to damages for emotional distress;

E. An award of liquidated damages in an amount to be determined at trial;

F. An award of punitive damages in an amount to be determined at trial;

G. Prejudgment interest on all amounts due;

H. An award of Plaintiff's reasonable attorneys' fees and costs; and,

I. Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: December 21, 2022

Respectfully submitted,

**MORGAN & MORGAN, P.A.**

By: _____

**Bryan Arbeit, Esq.**
Florida Bar No. 1010329
Telephone: (954) 694-9610
Facsimile: (954) 694-9695
Email: barbeit@forthepeople.com
**Allison M. Rattet, Esq.**
Florida Bar No. 1023573
Telephone: (954) 807-7774
Facsimile: (954) 807-7797
Email: arattet@forthepeople.com
**Morgan & Morgan, P.A.**
8151 Peters Road, Suite 4000
Plantation, FL 33324
*Attorneys for Plaintiff*